# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

CIVIL ACTION NO. 17-58-DLB

DAVID NELSON CREECH                                                    PLAINTIFF

vs.                      **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 18, 2014, Plaintiff David Nelson Creech filed an application for disability insurance benefits ("DIB"), alleging disability beginning on March 6, 2014. (Tr. 172-75). Specifically, Plaintiff alleged that he was limited in his ability to work due to the following: bone deterioration disease in his back, degenerative disc disease, arthritis in both hands, "HBP", and asthma. (Tr. 191).

Plaintiff's claim was denied initially and on reconsideration. (Tr. 60-75, 78-93). At Plaintiff's request, an administrative hearing was conducted on August 1, 2016, before Administrative Law Judge ("ALJ") Roger L. Reynolds. (Tr. 34-59). On June 23, 2015, ALJ Reynolds ruled that Plaintiff was not entitled to benefits. (Tr. 11-26). This decision

1

became the final decision of the Commissioner when the Appeals Council denied review on January 27, 2017. (Tr. 1-5).

On March 27, 2017, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 14 and 17).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his amended alleged onset date, March 6, 2014, through his date last insured. (Tr. 16). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: obesity; chronic low back pain with left leg radiculopathy secondary to degenerative disc disease of the lumbar spine, with disc herniations at the L4-5 and L5-S1 levels; asthma/chronic obstructive pulmonary disease with continued nicotine abuse; osteoporosis and scoliosis of the thoracic spine; hypertension; anxiety NOS (not otherwise specified); and depression NOS (20 C.F.R. § 404.1520(c)). (Tr. 16). At Step Three, the ALJ considered Listings 1.04, 3.02, 30.0, 12.04 and 12.06, and concluded that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 22).

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the exertional and non-exertional limitations as follows:

> He can lift and carry ten pounds occasionally and five pounds frequently. The claimant can stand or walk two hours in an eight-hour workday. He can sit six hours in an eight-hour workday. He cannot climb ropes, ladders or scaffolds, but he can occasionally climb stairs or ramps. The claimant can occasionally stoop, kneel, crouch or crawl. He cannot perform aerobic activities such as running or jumping. He should avoid work with hands over the head. The claimant cannot operate foot pedal controls. He should avoid exposure to concentrated dusts, gases, smoke, fumes, temperature extremes, excess humidity, concentrated vibration or industrial hazards. The claimant requires entry-level work with simple repetitive procedures. He can tolerate only occasional changes in work routines. The claimant should work in an object-oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

(Tr. 19). Based upon the RFC, the ALJ concluded that Plaintiff was not able to perform his past relevant work. (Tr. 25). Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26). The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of decision. (Tr. 26).

### C. Plaintiff's Arguments

Plaintiff presents one issue on appeal, alleging that the ALJ "erred in rejecting the opinion of treating physician Van Breeding, M.D." (Doc. # 15 at 1). For the reasons below, the Court finds that the ALJ did not err in weighing Doctor Breeding's opinion.

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable

4

medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source is one that has not examined the claimant but has provided medical or other opinion evidence in the case. *Id.*

Plaintiff assigns as error the weight that the ALJ gave to Doctor Breeding's assessment of his functional limitation. (Doc. # 15). In doing so, Plaintiff does not argue that Doctor Breeding's assessment and opinion should be given "controlling weight" (Tr. 15 at 10), but that the ALJ did not "discuss the significance of [Doctor] Breeding's opinion as a treating physician." *Id.* at 9.

The Social Security Administration regulations require the ALJ to give a treating physician's opinion weight based on the following: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability of the opinion; the consistency of the opinion with other evidence in the record; and whether the treating source is a specialist. 20 C.F.R. § 404.1527(c). In announcing the relative weight given to a treating physician's opinion, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." 20 C.F.R. § 404.1527(f)(2). The ALJ must also "always give good reasons … for the weight [given to a claimant's] treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2)

In determining the Plaintiff's RFC, the ALJ analyzed the record, including medical and testimonial evidence. (Tr. 19-24). The ALJ considered Plaintiff's testimony at the hearing on this matter, the May and June 2014 treatment and examination notes of Doctor Tibbs, the March through September 2015 pain-management records of Doctor Sai Gutti, the May 2015 nerve conduction velocity study of Doctor Sajita Gutti, the February 2015 consultative examination by Doctor Kip Beard, the September 2015 examination by Doctor J. Thomas Burt, and Plaintiff's treatment history at Mountain Comprehensive Health Corp. ("MCHC") from March 2014 through June 2016, including the functional-capacity form filled out by physician's assistant Sarah Justice and subsequently signed by Doctor Van Breeding on June 28, 2016. (Tr. 21-22). The ALJ also considered records from Plaintiff's emergency-room visit in May 2014 and past records from MCHC, confirming a prior injury and an L5-S1 microdiscectomy. (Tr. 22). In addition, the ALJ considered Plaintiff's functional capacity assessment made by Doctor S. Mukherjee in March 2015, and agreed with by Doctor P. Saranga in June 2015. (Tr. 22-23). Both Doctors Mukherjee and Saranga are state agency medical consultants. *Id*.

After consideration of the objective medical evidence, the ALJ determined that Plaintiff had "severe impairments, but the impairments [did] not foreclose all useful abilities." (Tr. 23). The ALJ found that Plaintiff had "significant degenerative changes in his lumbar spine as well as surgery almost 10 years ago," as well as "limited range of lumbar motion and mixed findings on straight-leg-raise tests (some listed as positive, others listed as equivocal, and others as negative)." (Tr. 23-24). However, "[a]t least two neurosurgeons, [Doctors] Tibbs and Burt, do not feel the claimant needs surgical intervention." (Tr. 24). The ALJ concluded his analysis of Plaintiff's impairments by

6

stating that "the residual function capacity adopts very strict exertional, postural, manipulative, and environmental limitations," and that such "guidelines give due accommodation to the severe physical impairments." (Tr. 24).

The ALJ was equally comprehensive in considering the opinion evidence of the doctors who treated and examined Plaintiff. (Tr. 24). The ALJ give significant weight to Doctors Tibbs, Burt, and Beard, as they were examining doctors and were "generally consistent with one another." *Id.* The ALJ gave less weight to the state agency consultants, as their opinions complimented those of Doctors Tibbs, Burt, and Beard, but they were not examining doctors. *Id.* However, in balancing the Plaintiff's subjective complaints, the ALJ found it necessary to adopt stricter work limitations than the state agency doctors had suggested. *Id.* Finally, because the limitations that Doctor Breeding placed on Plaintiff were "not consistent with the objective clinical findings," the ALJ gave Doctor Breeding's functional-capacity assessment of Plaintiff little weight. *Id.*

Contrary to Plaintiff's claim, the ALJ did not reject Doctor Breeding's medical opinion; instead, the ALJ considered it in light of the medical evidence (Tr. 21-23), and the opinions of several specialists (Tr. 24), and determined that Doctor Breeding's functional-capacity opinion was inconsistent with the medical evidence in the record. *Id.* Thus, the ALJ's determination that Doctor Breeding's opinion merited "little weight," detailing his "good reasons" for doing so, were in accordance with 20 C.F.R. § 404.1527(c). Accordingly, the Court finds no error in this portion of the ALJ's Step Four analysis.

In the end, Plaintiff is asking this Court to find that the ALJ misinterpreted the evidence or emphasized certain aspects of the medical record in favor of others.

However, this is equivalent to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by substantial evidence. *See Roberts v. Astrue*, No. 1:09-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). As stated earlier, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d at 781-82. Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

## III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 17) is hereby **GRANTED;** and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 13th day of December, 2017.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\17-58 Creech MOO.docx